# MASTER AREA LICENSE AGREEMENT

This Master Area License and Manufacturing Agreement ("Agreement") is made this 21st day of January, 2005 by and between Trakloc International, LLC, a Nevada limited liability company (hereinafter "Licensor"), whose headquarters office address is 1135 Terminal Way, Suite 209, Reno, NV 89502, and Pacific Rollforming, LLC, an Alaska limited liability company doing business as Trakloc Pacific (hereinafter "Licensee"), whose business address is 3400 International Street, Fairbanks, Alaska 99701, with reference to the following facts:

WHEREAS Licensor has unencumbered rights to grant the licenses granted herein and to perform the obligations of Licensor set forth in the covenants of this agreement;

WHEREAS Licensee desires to obtain a license from Licensor to practice the inventions described in International Patent Application No. PCT/AU00/00500 and in a pending Australian Patent Application describing a method of making the structural members described in said Application No PCT/AU00/00500 (hereinafter "said Inventions");

WHEREAS Licensee desires to obtain a license from Licensor to use the mark "TRAKLOC" in connection with Licensee's practice of said Inventions described in said International Patent Applications;

WHEREAS Licensee desires to obtain Technical Information from Licensor for use in practicing said Inventions described in said International Patent Applications;

WHEREAS Licensee has the requisite experience, resources and distribution channels to commercially practice said Inventions in the designated Territory; and

WHEREAS Licensor is willing to grant to Licensee said licenses and to provide said Technical Information in accordance with the terms and conditions set forth herein;

NOW THEREFORE in consideration of the foregoing premises and the following covenants, the parties hereto agree as follows:

1. Definitions. Solely for the purposes of this Agreement, the following terms shall have the following meaning:

    1.1 "Products" shall mean structural members embodying and/or made by any of said Inventions described and claimed in the Patent Rights.

    1.2 "Technical Information" shall mean all associated documentation, designs, plans, specifications, drawings, instructions, and know-how for manufacturing the Products.

EXHIBIT ___1___ PAGE ___1___

1.3. "Patent Rights" shall mean all rights under all United States Patent applications describing any of said inventions described in said International and Australian patent applications and any United States Patent applications for any improvements to said Inventions filed or caused to be filed by any of Licensor, the applicant(s) and/or the inventor(s) named in said International and Australian Patent applications or by any entity affiliated or related in any way with Licensor, said applicant(s) and/or said inventor(s), and all rights under any and all patents issued from said United States applications and any and all reissues of said issued patents.

1.4 "Territory" shall mean solely the States of the United States of America listed in Schedule A to this Agreement. Schedule A may be modified only by the mutual written consent of the parties.

2. Licenses.

2.1. Licensor hereby grants to Licensee and Licensee accepts an exclusive right and license under the Patent Rights to make, have made, use, sell and offer to sell Products in the Territory and to import Products into the Territory which are manufactured in other areas within the Territory. If Licensee wishes to import Products into the Territory which are manufactured outside the Territory, Licensee may advise Licensee of the circumstances of such proposed importing of Products and request Licensor, in writing, to permit such importing of Products from outside the Territory, and Licensor will permit such importing so long as (a) the area from which the Products are being imported is not then licensed to another area licensee, or (b) if the area from which the Products are being imported is then licensed to another area licensee, that other licensee consents, in writing, to Licensee's proposal after full disclosure of the circumstances of such proposal to such other area licensee.

2.2. Licensee shall have the right to grant sublicenses, provided that the sub-licensees agree to be bound by a written sublicensing or distributor agreement in a form satisfactory to Licensor in its reasonable discretion, which is consistent with the provisions of this Agreement and shall not be effective until approved by Licensor in its reasonable discretion.

2.3. Licensor hereby grants to Licensee and Licensee accepts a sole right and license in the Territory to use the mark "TRAKLOC" on Products that Licensee sells or offers to sell under the license granted in Section 2.1, to use the mark "TRAKLOC" for services that Licensee provides in connection with the sale of said Products under the license granted in Section 2.1, and to use the trade name "TRAKLOC PACIFIC" for its business of practicing said Inventions. The license granted under this section 2.3. does not include the rights to grant sublicenses.

2.4. Licensee's use of the mark "TRAKLOC" shall always be accompanied by the appropriate trademark/service mark designation, such as TM, SM or ®.

2.5. Licensee agrees to comply with any and all instructions from Licensor regarding the use, placement and design of the mark "TRAKLOC".

2.6. Licensee agrees to reproduce the mark "TRAKLOC" on every ten (10) lineal feet of Product in a conspicuous location. Licensee shall comply with the reasonable instructions of Licensor regarding the size and location of the Licensor trademark on the manufactured goods.

2.7. Licensee agrees not to use the mark "TRAKLOC" on any goods or in connection with any services that are not in conformance with quality assurance standards specified by Licensor.

2.8. Licensee's use of the mark "TRAKLOC" in any form shall inure solely to the benefit of Licensor for appropriate registration of the mark "TRAKLOC" as a trademark and/or service mark with United States Patent and Trademark Office; and Licensee agrees to provide to Licensor specimens of such use as required to effect said registrations.

2.9. No use by Licensee of the mark "TRAKLOC" or the trade name "TRAKLOC PACIFIC" shall create any rights inuring to Licensee in or to the mark "TRAKLOC" or in or to any trade name including the word "TRAKLOC".

2.10. All goodwill derived from Licensee's use of the mark "TRAKLOC" either alone or in combination with other terms shall inure to the benefit of Licensor.

3. Terms of Licenses.

3.1. Unless earlier terminated pursuant to Part 19 or Part 20 of this Agreement, the license granted in Section 2.1. and any sublicenses granted pursuant to Section 2.2. shall terminate upon the expiration of the last-to-expire United States Patent included in the Patent Rights.

3.2. Unless terminated pursuant to Part 19 or Part 20 of this Agreement, the license granted in Section 2.3. shall not terminate until such time as Licensee has abandoned all use of both the mark "TRAKLOC" and the trade name "TRAKLOC PACIFIC" for at least one year.

4. Licensor's rights outside of Territory; Limitations on Licensor within Territory.

4.1. The license granted herein under Section 2.1. places no restriction on Licensor's right to grant licenses under the Patent Rights outside the Territory to any third party.

4.2. Licensor shall not directly or indirectly make, have made, use, market, sell, or distribute Products in the Territory or import Products into the Territory.

4.3. Licensor shall not sell or distribute any Products to any third party who has made, used, sold or offered to sell any Products within the Territory or imported Products into the Territory, or who has indicated a desire to make, use or sell any Products within the Territory or to import Products into the Territory.

4.4. Licensor shall not enable any third-party entity (including, but not limited to, licensee(s) under the Patent Rights for any other territory), whether or not affiliated or related in any way with Licensor, to make, have made, use, market, sell, or distribute Products in the Territory, to import Products into the Territory, or to sell or distribute Products to any other third party who has made, used, sold or offered to sell any Products within the Territory or imported Products into the Territory, or who has indicated a desire to make, use or sell any Products within the Territory or to import Products into the Territory.

4.5. Any other rights not expressly granted in this Agreement are retained by Licensor.

5. Delivery of Technical Information

5.1. Upon execution of this Agreement, Licensor shall deliver to Licensee in a timely manner all tangible forms of the Technical Information.

5.2. Upon any and all development of additional Technical Information by any of Licensor, the applicant(s) and/or the inventor(s) named in said International Patent applications or by any entity affiliated or related in any way with Licensor, said applicant(s) and/or said inventor(s) or by licensee(s) under the Patent Rights for any other territory, Licensor shall deliver all tangible forms of said additional Technical Information to Licensee in a timely manner.

6. Territorial Limitations.

6.1. Licensee will not grant a sublicense pursuant to Section 2.2. to any third party outside the Territory or sell or distribute the Products in any state in which an exclusive license under the Patent Rights has been granted to a third party.

6.2. If Licensee has knowledge that one of its customers will or has marketed, sold or distributed Products to a third party in any state in which an exclusive license under the Patent Rights has been granted to a third party, Licensee will promptly provide written notice to Licensor of the identity of the customer and the location where the Products have been marketed, sold or distributed. Licensor may then, in its sole discretion, advise Licensee to instruct the customer of Licensee to cease the sale and distribution of the Products outside of the Territory. If the customer persists in the sale and distribution of the Products outside the Territory, Licensor shall have the right to instruct Licensee to cease all further sales to that customer and Licensee shall comply with any such instruction.

EXHIBIT __1__ PAGE __4__

6.3  Notwithstanding the foregoing provisions of this Part 6, if a customer of Licensee wishes to purchase Products for a project located in a territory subject to another Master Area License Agreement, then Licensee shall notify Licensor of such event and shall concurrently refer the customer to the licensee (the "Other Licensee")for the state in which the project is to be located. Licensee and Other Licensee shall then negotiate in good faith a commission to be paid to Licensee for referral of the customer to Other Licensee, and the terms and conditions of such payment. If, after ten days from the date of such referral and notice to Licensor, Licensee and Other Licensee are unable to agree on the commission to be paid to Licensee or the terms and conditions of payment of same, then either Licensee or Other Licensee, by written notice to Licensor, may demand that Licensor resolve the matter and establish the commission and the terms and conditions of payment. In resolving such dispute, Licensor may require each party to submit its written proposal, may conduct joint or separate meetings or discussions with the parties, and may take any other action that Licensor deems necessary or appropriate to render a decision. Within ten days after the matter is submitted to Licensor for resolution, Licensor shall determine the matter, in its sole and absolute discretion, and the decision of Licensor shall be binding upon Licensee and Other Licensee for all purposes, without recourse or liability to Licensor.

7. Responsibilities of Licensor.

   7.1. Marketing Assistance. Licensor is in the process of developing marketing programs for the Products. Licensor will advise Licensee of any national or regional marketing programs and allow Licensee to participate in such programs, if applicable. Licensee may consult with Licensor in the establishment by Licensee of its marketing programs.

   7.2. Marketing Literature. Licensor is developing standardized marketing literature for the Products. When such marketing information has been completed and is available for distribution, Licensor will provide to Licensee a complete set of the standardized marketing information, brochures, advertisements and related marketing literature for use by Licensee in the marketing of the Products. Licensee may, at its own expense, reproduce and distribute such marketing literature. Licensee may also modify or enhance such materials at its own expense, so long as Licensee complies with the requirements of Section 8.3.

   7.3  Leads. Licensor will promptly forward to Licensee any and all leads, inquiries or contacts, and all associated information, related to the Products in the Territory.

   7.4  Modification or Enhancement of Manufacturing Process. Licensor shall provide written notice to Licensee of any and all improvements in the technology, material enhancements, derivative works, additions or error corrections made to the Technical Information that is incorporated into the Products. Such notice shall describe in sufficient detail such improvement, enhancement, modification or error correction and

EXHIBIT  1   PAGE  5

Licensee shall have the right to incorporate such improvements, enhancement, modification or error correction into the Products.

7.5 **Manufacturing Equipment.** Licensor shall arrange for machines to manufacture the Products to be made available to Licensee for purchase or lease from vendors which shall be approved by Licensor. Only vendors approved by Licensor may be used and only machines arranged by Licensor may be used to manufacture the Products.

7.6. **Status of Patent Applications.** Licensor shall arrange for its patent counsel to promptly provide to Licensee's patent counsel, for his eyes only and without disclosure to Licensee or any other person, from time to time, no more frequently than two times in any 12-month period, upon reasonable request to Licensor, copies of such applications, amendments, correspondence and other information relating to the Patent Rights, as Licensor and its patent counsel, in their reasonable discretion, deem appropriate for disclosure to Licensee's patent counsel.

8. **Responsibilities of Licensee.**

8.1 **Use of Best Efforts.** Licensee will use its best efforts to market, sell and distribute the Products in the Territory and to increase the sales volume of the Products annually. Licensee shall use all methods normally and effectively utilized by licensees or distributors of galvanized steel studs and tracks in the Territory. Licensee shall bear all costs and expenses incurred in the marketing, selling and distribution of the Products in the Territory and in the performance of its obligations under this Agreement.

8.2 **Quarterly Reports.** Licensee shall furnish to Licensor on a quarterly basis a written report of potential sales and general marketing conditions in the Territory. The reports supplied by Licensee to Licensor will contain the latest information available in regard to marketing forecasts in the Territory. Such reports shall be in form reasonably acceptable to Licensor.

8.3 **Approval of Marketing Literature.** Licensee will submit to Licensor for review and approval prior to its dissemination all marketing literature that Licensee creates that is a deviation, modification or enhancement, regardless of materiality, of the standard marketing material delivered to Licensee under Section 7.2. If Licensor does not respond within thirty (30) days after a submission by Licensee, the submitted literature will be deemed approved.

8.4. **Product Improvements By Licensee.** Licensee shall promptly disclose in writing to Licensor any improvement to said Inventions made by Licensee. Licensee shall make such disclosure prior to utilizing such improvement and prior to publicly disclosing such improvement. Licensor shall have the right, in its sole discretion, (a) to either approve or disapprove modification of the Products and/or modification of the manufacture of the Products in accordance with any such improvement, (b) to incorporate any such improvement into the Technical Information that is proprietary to Licensor and

EXHIBIT 1 PAGE 6

confidential, (c) to publicly disclose such improvement, and (d) to decide whether or not a patent application should be filed for such improvement and whether or not said patent application should be assigned to Licensor. Licensee agrees to cooperate with Licensor in said filing and assignment of any such patent application, provided that Licensor pays all costs and fees incident to said filing and assignment of said patent application.

8.5 Supervision of Sub-licensee. Licensee shall be responsible for ensuring that each sub-licensee of Licensee complies with the requirements and conditions contained in the form of sub-licensing agreement for such sub-licensee approved by Licensor. Licensee shall conduct periodic inspections of such sub-licensee's manufacturing facility and, if necessary or appropriate, shall audit such sub-licensee's books and records.

8.6 Manufacturing. Licensee shall purchase or lease the equipment necessary to manufacture the only from vendors approved by Licensor. Licensee shall manufacture the Products in the Territory pursuant to the terms and conditions of Section 12 hereof.

9. Royalties.

9.1 Royalty Fee. As consideration for the grant of the License, Licensee shall pay royalties to Licensor as set forth in Schedule B. Licensee also agrees to pay minimum annual Royalties (the "Minimum Annual Royalty"), as set forth in Schedule C.

9.2 Reporting and Royalty Payment Requirements. Licensee shall deliver to Licensor a monthly report disclosing total production of Products at each manufacturing facility for the prior month. Said report shall also show the lineal feet of Products delivered to customers in the prior month broken down into each state into which Products have been shipped and shall also show the lineal feet of all Products shipped for which payment was received in the prior month on all prior sales also broken down on a state by state basis. <u>Each monthly report shall be due by the last day of the month.</u> Licensee shall forward to Licensor along with the monthly report any Royalty payment due as shown in such report. Such report shall include all sales by or to sub-licensees for the applicable reporting period.

9.3 Late Charges. If Licensor does not receive the full amount due on or before the date upon which such amounts are due and payable, such outstanding amounts shall thereafter bear interest at the rate of ten percent (10) per annum until fully paid.

9.4 Place of Payment. Until instructed otherwise by Licensor in writing, all Royalty payments shall be made by check payable to Licensor and the monthly reports and Royalty payments shall be mailed or delivered to Licensor c/o Richard E. Knecht, 1301 Dove Street, Suite 900, Newport Beach, CA 92660

9.5 Taxes. In addition to all the amounts due to Licensor under this Agreement, Licensee shall be responsible for any sales, use, excise, property or other federal, state, local or foreign taxes, duties or tariffs related to the exercise by Licensee of its rights under this Agreement.

10. **Licensee Records.** Licensee shall keep at its principal place of business accurate records, during the term of this Agreement and for two (2) years thereafter, relating to the manufacture, marketing, sale, distribution, use and sub-licensing by Licensee of the Products. Such business records shall include manufacturing logs or records, the identity, address, date of delivery, and type and total of Products sold to a customer and a copy of the original invoice to each customer.

11. **Right of Audit.** Licensor, or its authorized representatives, shall have the right upon reasonable notice (not less than five business days) and during Licensee's normal business hours to enter Licensee's premises once during any twelve (12) month period for the purposes of auditing any and all records, documents, journals and files relating to the Products and the manufacture, distribution or sale of the Products. Licensee's records shall be considered confidential and shall not be disclosed by Licensor or its authorized representatives except to the extent reasonably necessary to determine the accuracy of the Royalty reports. Licensee shall promptly pay any amounts due and owing to Licensor as a result of the audit upon written demand. Licensor shall bear the cost of the audit unless the audit discloses a discrepancy in the payment of Royalties of more than five percent (5%).

12. **Manufacturing.**

    12.1 **Quality Assurance.** Licensee shall adhere to the instructions, specifications and designs contained in the Technical Information in the manufacture of the Products, and will make all remedial changes recommended by Licensor to maintain Licensor's standard of quality. Licensee shall make no modification in the manufacture of the Products without the prior written consent of Licensor. The Products manufactured by Licensee shall be of a fit, merchantable, and workmanlike quality and free from defect.

    12.2 **Materials.** Licensee will ensure that the materials used in the manufacture of the Products comply with AISI standards for light gauge steel.

    12.3 **Right to Inspect.** Licensor, or its representatives, shall have the right, during normal business hours and not more than twice a year, to visit and inspect the manufacturing facility and equipment used in the manufacturing of the Products and the inventory of the Products to ensure that Licensee is in compliance with the AISI standards and the specifications and requirements contained in the Technical Information.

    12.4 **Samples.** Licensee will deliver, at its expense, to Licensor a set of samples of the Products once the manufacturing process is established, but prior to the sale and distribution of the Products. Licensor shall promptly notify Licensee in writing of any defects or variances in the samples. Licensee will correct all defects and variances from the Technical Information provided by Licensor. Once production of the Products has begun, Licensee will submit to Licensor, at its expense, one set of samples of the Products for every 500 tons of rolled steel used in the manufacture of the Products.

12.5 Equipment Order Date. No later than 120 days following the date of this Agreement, Licensee shall place an initial order for equipment to produce Products for sale, with such equipment, when installed, to be located anywhere inside the Territory (unless otherwise approved by Licensor in its discretion). This order must be made with the exclusive equipment supplier for Licensor. This supplier is Samco Machinery Company located in Toronto, Ontario, Canada.

13. Dies and Tooling.

13.1 Purchase. Licensee shall purchase the dies and tooling, at its expense, only from approved vendors and such dies and tooling will comply with the specifications and designs outlined in the Technical Information. Licensor will assist Licensee in arranging for the purchase of conforming dies and tooling.

13.2 Modification. Licensee shall make no alteration, modification or adjustment to the dies or tooling without the prior written consent of Licensor. Licensee shall not sell or transfer the dies or tooling without the prior written permission of Licensor. Further, Licensee shall not remove, alter, modify or conceal any markings, designations or numbers contained on the dies or tooling.

14. Restrictions on Authority.

14.1 No Authority. Licensee shall have no authority to bind or commit Licensor to any contract or agreement or otherwise hold itself out as an agent of Licensor. Licensee shall have no authority, under any circumstances, either expressly or by implication, to incur any liability or obligation on behalf of Licensor. Except as granted under the license set forth in Section 3.3, Licensee shall have no authority to carry any accounts in the name of Licensor. Licensee is solely responsible for its own salespeople and representatives and for their actions. This Agreement does not give rise to or constitute a partnership or joint venture.

14.2 Independent. Licensee acknowledges that it is an independent contractor. Licensee, in its sole and exclusive discretion, will establish its own resale prices for the Products. Licensor shall exercise no control over, nor have a right to control the activities or operations of Licensee, except as provided within this Agreement. Licensee shall conduct its business in a manner that reflects favorably on Licensor and shall use its reasonable efforts to promote the goodwill and image of Licensor in the Territory.

15. Proprietary Rights In Technical Information.

15.1 Nature of Proprietary Rights. The Technical Information contains valuable confidential information and trade secrets developed through the substantial expenditure of time and resources and acquired by Licensor due to the expenditure of money. Licensee acknowledges and agrees that any portion of the Technical Information that was not previously known to Licensee or to the general public is and shall remain

proprietary to Licensor until such time as such respective previously unknown portion becomes known to the general public through no fault of Licensee.

15.2 **Obligations Regarding Confidential Information.** Licensee agrees to observe complete confidentiality with regard to those portions of the confidential proprietary Technical Information that Licensor has marked as "confidential", including, but not limited to, not disclosing or otherwise permitting any third person or entity access to the confidential-marked proprietary Technical Information (access shall be permitted to an employee or consultant of Licensee only on a need-to-know basis) and making sure employees or consultants who receive access to the confidential-marked proprietary Technical Information are advised of its confidential and proprietary nature. Further, Licensee will obtain in writing from such employees and consultants an obligation to not copy, disclose or use the confidential-marked proprietary Technical Information in an unauthorized manner. In addition the Licensee shall use the confidential-marked proprietary Technical Information only in the exercise of the license granted in Section 2.1.

15.3 **Survival of Obligations and Equitable Relief.** Licensee's obligations and Licensor's rights under this Section 15 shall survive the expiration or termination of the licenses granted under this Agreement regardless of reason or cause. The confidential proprietary Technical Information is unique property of extreme value and any breach of the confidentiality obligations under this Agreement would cause Licensor and its licensor irreparable harm that cannot be adequately assessed in monetary damages. Therefore, Licensee agrees that Licensor is entitled to such equitable relief to remedy any actual or threatened breach of the proprietary rights provisions contained herein.

16. **Title Warranty, Infringement Indemnification, Patent and ICC-ES.**

16.1 **Warranty.** Licensor represents and warrants that it has the right to grant the exclusive License in the Territory and provide the Technical Information to Licensee as provided in this Agreement. Licensor further represents and warrants that any termination or modification of Licensor's rights with respect to the Products shall in no way alter or modify licensee's rights with respect to the Products under this Agreement.

16.2 **Indemnification by Licensor.** Licensor agrees upon receipt of written notification from Licensee to assume full responsibility for the defense of any legal action or proceeding that may be brought against Licensee or its directors, officers, members, managers, or agents for any actual or alleged infringement of a U.S. patent as a result of any use of the Products or the sale of the Products within the Territory. Licensor further agrees to indemnify and hold harmless Licensee and its directors, officers, members, managers, and agents against any and all reasonable expenses, claims, losses, profits and damages, including without limitation court costs, reasonable attorneys' fees and disbursements and amounts paid in settlement (that Licensor consents to) or final judgment resulting from any such suit or proceeding; provided, however, that Trakloc's obligation to pay damages and costs on behalf of Licensee pursuant to this Section 16.2 shall