UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC ROLLFORMING, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>TRAKLOC INTERNATIONAL, LLC, *et al.*<br><br>    Defendants. | Civil No. 07cv1897-L(JMA)<br><br>**ORDER (1) GRANTING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER; (2) GRANTING PLAINTIFF'S REQUEST FOR AN ORDER SHORTENING TIME; AND (3) SETTING HEARING DATE AND BRIEFING SCHEDULE ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION** |

    Plaintiff Pacific Rollforming, LLC dba Trakloc Pacific ("Pacific"), filed a complaint for breach of contract, fraud, breach of implied covenant of good faith and fair dealing, defamation, interference with prospective business advantage and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*  The dispute arises primarily out of a Master Area License Agreement ("License Agreement") whereby Defendant Trakloc International, LLC ("TLI") granted Pacific a license to manufacture and market a certain proprietary drywall and stud framing system ("Trakloc").  Defendant Trakloc North America ("TLNA"), allegedly TLI's successor-in-interest, issued a notice of termination of Pacific's License Agreement and allegedly interfered with Pacific's business in Nevada.  On October 30, 2007, prompted by the alleged interference, Pacific filed an ex parte motion for a temporary

restraining order ("TRO"), motion for a preliminary injunction and a request for an order shortening time. Pacific argues a TRO is required because TLNA's unlawful conduct is threatening to put Pacific out of business. Defendants TLNA and its President David Jablow (collectively "TLNA") opposed Pacific's motions. They argue they are not interfering with Pacific's sales in Nevada because their interests are aligned with Pacific's. For the reasons which follow, Pacific's ex parte application for a TRO is **GRANTED.**

Pursuant to 28 U.S.C. § 1331, the court has subject matter jurisdiction over the action because it arises under RICO, a federal statute.

The purpose of preliminary injunctive relief, including a temporary restraining order, "is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. (Orange County Superintendent of Sch.)*, 840 F.2d 701, 704 (9th Cir. 1988). "The *status quo ante litem* refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. The Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). A party seeking preliminary injunctive relief, including a temporary restraining order, under Rule 65 must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in the moving party's favor. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998).

It is undisputed that Pacific entered into an exclusive License Agreement with TLI to manufacture, distribute and sell the proprietary Trakloc system in several states, including Nevada. TLNA maintains it acquired TLI's interest in the License Agreement in July 2007. Pacific argues that on September 12, 2007, TLNA wrongfully issued a thirty-day notice of termination of the License Agreement. In addition, TLNA, together with Defendants Bert Tabor ("Tabor"), Thomas Horst ("Horst"), Southeastern Metals, Inc., and its President Gary Nelson, Jr. ("Nelson"), contacted Pacific's Trakloc customers and prospective customers in Las Vegas,

Nevada, to solicit business from them by falsely representing that Pacific's Trakloc products were not ICC certified and that Pacific was no longer a Trakloc licensee.

In the opposition, TLNA initially maintains that the court should disregard much of Pacific's evidence as hearsay. In the TRO context, "[t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). Accordingly, the court gave both sides' hearsay[1] some weight for purposes of considering Pacific's application for a TRO.

TLNA also maintains that its efforts in Las Vegas, Nevada are not intended to damage Pacific's business under the License Agreement, but only to help Pacific since TLNA's and Pacific's interests are aligned. This argument is not supported by the declarations filed by TLNA or by the copious correspondence between TLNA and Pacific in the late summer and early fall 2007.

In the notice of termination letter, TLNA alleged Pacific was in monetary and non-monetary default under the License Agreement. Although TLNA acknowledged the existence of an elaborate provision governing license termination by licensor, it expressly refused to follow it. (Phillips Decl. Exh. 1; First Am. Compl. Exh. 1 (License Agreement) ¶ 20.2.) Accordingly, TLNA's 30-day notice of termination appears to have been in violation of the express terms of the License Agreement.[2]

Even before the expiration of the 30-day cure period, TLNA stepped up its efforts to interfere with Pacific's performance under the License Agreement and discredit it in its exclusive license territory. TLNA had its counsel write to Pacific's counsel to demand Pacific

---

[1] The declarations filed in support of TLNA's opposition were themselves filled with hearsay.

[2] Moreover, it also appears that some of the alleged non-monetary grounds for termination were in fact TLNA's defaults under the License Agreement rather than Pacific's. For example, TLNA maintained Pacific failed to obtain ICC certification. Aside from the fact that Pacific submitted evidence that it had the requisite certification (*see* Phillips Decl. Exh. 3, 5), the duty to obtain the certification was the licensor's not licensee's (License Agreement ¶ 16.5).

cease communicating with TLNA regarding operational issues under the License Agreement. (Phillips Decl. Exh. 2.) TLNA threatened Pacific with a lawsuit it if appeared at the Metalcon International trade show in Las Vegas from October 3 though 5, where Pacific was to have a Trakloc booth. (Phillips Decl. Exh. 4 & 5.) TLNA wrote to another Trakloc licensee, Trakloc Mid-America, to inform them Pacific was in default and that as of October 12, 2007, they may be prohibited from supplying Pacific with the a certain slotted TSE part Pacific was using in manufacturing the Trakloc system.[3] (*See* Samide Decl. Exh. 2.) TLNA's declarations demonstrate that TLNA together with Nelson, Tabor and Horst, came to Las Vegas to meet with Pacific's existing and prospective customers and solicited their business. This was in itself in violation of the License Agreement, which prohibits licensor interference with licensees' business in their exclusive territories and prohibits the licensor from enabling third parties, such as Southeastern Metals, Inc., Nelson, Tabor and Horst, to market Trakloc in another licensee's exclusive territory. (*See* License Agreement ¶¶ 4.2 - 4.4.)

   TLNA claims it is not interfering with Pacific's customer relationships, but merely assisting Pacific's customers who were dissatisfied with Pacific's service. The default provision of the License Agreement provides a remedy for this situation. When the licensee is in default so as to fail to generate sufficient sales to pay minimum royalties, as TLNA claims Pacific is, the licensor's remedy is to evaluate the licensee's operations and make recommendations to assist the licensee for at least one year in improving its sales in the territory. (*Id*. ¶ 20.2.) TLNA expressly refused to follow this provision.[4] Based on the foregoing, Pacific has shown a strong

---

[3] On October 12, 2007, TLNA informed all licensees "that they are prohibited by the terms of their respective license agreements from marketing, selling or distributing TRAKLOC products outside their respective territories. Additionally, any consents which TLNA may have given to permit a licensee to market, sell or distribute TRAKLOC products outside of that licensee's territory are hereby revoked." (Phillips Decl. Exh. 8.) The effect of this letter was to terminate Pacific's supply of the part it was ordering from Trakloc Mid-America. Furthermore, TLNA's instruction to its licensees in this regard appears to have been in violation of the License Agreement. (*See* License Agreement ¶¶ 2.1, 7.5, 8.6, 12.5; *see also* Darmody Decl. ¶ 3.)

[4] TLNA also argues that lack of ICC certification on Pacific's Trakloc products raises a public safety issue and should weigh against granting a TRO. This argument is unsupported by evidence, admissible or inadmissible. Moreover, the duty under the License Agreement to obtain the certification rests with TLNA as the licensor. (License Agreement ¶

probability of success on the merits.[5]

The court next considers whether Pacific has also made the requisite showing of possibility of irreparable harm. *See Sun Microsystems*, 188 F.3d at 1119. "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award. . . . However, . . . intangible injuries such as damage to . . . goodwill, qualify as irreparable harm." *Rent-a-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (damage to advertising efforts and goodwill held irreparable harm). The factors supporting irreparable harm determination include inability to calculate damages, harm to goodwill, diminishment of competitive positions in marketplace, and lost opportunities to distribute unique products. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1263 (9th Cir. 2004). Pacific has sustained damage to its marketing efforts, diminishment in its competitive position in the Las Vegas market, loss of sale opportunities in its exclusive territory, and damage to the goodwill it had invested in and created with its customers in Las Vegas. Such damage would be difficult to quantify and therefore constitutes possible irreparable harm. *See Rent-a-Center*, 944 F.2d at 603.

TLNA maintains that granting Pacific's TRO application will visit irreparable harm on TLNA because it will damage its marketing and customer relations efforts it made in Las Vegas over the past few months. Because these marketing and customer relations efforts appear to constitute interference with Pacific's business in Nevada, this argument lacks merit. TLNA as licensor is prohibited from directly or indirectly marketing Trakloc system in a licensee's exclusive territory or assisting any third party in such endeavors. (*See* License Agreement ¶¶ 4.2 -4.4.)

/ / / / /

---

16.5.) On the other hand, Pacific presented evidence, albeit probably inadmissible, that it had obtained the requisite certification. (*See* Phillips Exh. 5.)

[5] In addition, both parties allude to, but do not directly address, another issue going directly to the merits. It appears the issue whether TLNA in fact acquired the licensor interest under the License Agreement is presently the subject of litigation. (*See* TLNA Memo. of P. & A. at 2; Phillips Decl. Exh. 9.) If TLNA is not the licensor, then Pacific's probability of success on the merits against TLNA is greater.

Having shown a strong likelihood of success on the merits and possibility of irreparable harm, Pacific is entitled to a TRO. The parties disagree on the amount of the bond Pacific should be required to post. While Pacific proposes a $25,000 bond, TLNA claims that no less than $ 2.2 million on a monthly basis will do.

District courts have wide discretion in setting the amount of the bond. *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999). The bond amount may be set at zero if there is no evidence the party will suffer damages from the injunction. *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000). Furthermore, in the Ninth Circuit the language of Rule 65(c) does not "absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

It is unclear how TLNA calculated the bond amount. It argues that 30 million lineal feet of Trakloc system are anticipated to be sold over an unspecified period of time, which would generate $1.2 million in base royalty fees under the License Agreement.. (TLNA Mem. of P. & A. at 7.) However, TLNA is requesting a bond for $2.2 million. (*Id.* at 8.) Even the $1.2 million bond is excessive. The 30 million lineal feet estimate is based on the declaration of Pacific's President that Pacific has a "back log of over 30,000,000 feet of product . . . either on order or in the pipeline for future order." (Beasley Decl. at 3.) Based on the declarations filed by both parties, it is not at all certain whether these orders will in fact be placed due to the confusion caused by representations made by TLNA, Southeastern Metals, Inc., Nelson, Tabor and Horst, that Pacific's products are not ICC certified and that Pacific is no longer a Trakloc licensee. (*See* Jablow Supp. Decl. at 2; Beasley Decl. at 6-7.) It is unclear how much Trakloc product will be sold at all. To the extent sales will be made, it is unclear over what period of time. Finally, the License Agreement calls for payment of base royalty fees only when payment is received (License Agreement, Schedule B), and it is unclear when payment will be received on any of the sales actually made. Accordingly, TLNA has not met its burden regarding the bond. *See Connecticut Gen. Life Ins. Co.*, 321 F.3d at 883.

The License Agreement obligates Pacific to pay, starting 24 months after first production, a minimum royalty fee of $44,000 per year for the Nevada territory. (License Agreement, Schedule B.)  Accordingly, the court finds the $25,000 bond proposed by Pacific to be reasonable for purposes of its TRO application.

For the foregoing reasons, Pacific's ex parte application for a TRO is **GRANTED** as follows, pending a hearing on its motion for a preliminary injunction:

1. Trakloc North America, LLC and its officers and agents are prohibited from restricting shipment of the slotted TSE part from Trakloc North America's licensee Trakloc Mid-America to Pacific Rollforming, LLC dba Trakloc Pacific; and

2. Trakloc North America, LLC and its officers and agents, Southeastern Metals, Inc., Gary Nelson, Jr., Bert Tabor and Thomas Horst are prohibited from (1) claiming that they, or any of them, are the authorized licensees for the Trakloc system in Nevada; (2) claiming that Trakloc Pacific is not the lawful licensee; and (3) contacting Trakloc Pacific's existing customers and prospective customers for the purpose of soliciting business or otherwise interfering with Trakloc Pacific's existing or prospective contracts.

This order is conditioned on Pacific posting a bond in the amount of $25,000 as security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Pacific's request for an order shortening time on its motion for a preliminary injunction is **GRANTED**.  Pacific's motion for a preliminary injunction is set for an **evidentiary hearing** on **November 20, 2007** at **10:30 a.m.**  As the parties have already filed voluminous papers, no additional briefing will be accepted by the court except as follows:

1. No later than November 13, 2007 at 4:30 p.m. Pacific shall file a memorandum of points and authorities no longer than fifteen (15) pages and supporting evidence, if any, addressing the following issues: (1) any and all lawsuits pertaining to the status of TLNA as licensor, including the parties, court, and the status of each such lawsuit; (2) the status of ICC certification of Pacific's Trakloc products; and (3) the appropriate bond amount if a preliminary injunction is granted.

2. No later than November 15, 2007 at 4:30 p.m., Defendants shall file a responsive memorandum of points and authorities no longer than fifteen (15) pages and supporting evidence, if any, addressing the same issues.

The court will entertain only admissible evidence for purposes of ruling on Pacific's motion for a preliminary injunction. Due to the evidentiary deficiencies in the declarations filed in support of and in opposition to Pacific's ex parte application for a TRO and its motion for a preliminary injunction, the parties are expected to produce witnesses at the evidentiary hearing.

**IT IS SO ORDERED**.

DATED: November 7, 2007

M. James Lorenz
United States District Court Judge

COPY TO:

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL