1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

PACIFIC ROLLFORMING, LLC *et al.*,    )   Civil No. 07cv1897-L(JMA)

11                                          )

               Plaintiffs,   )   **ORDER (1) GRANTING IN PART**

12                                          )   **AND DENYING IN PART MOTION**

v.                       )   **TO DISMISS FILED BY**

13                                          )   **DEFENDANTS TRAKLOC NORTH**

TRAKLOC NORTH AMERICA, LLC, *et*  )   **AMERICA AND DAVID JABLOW;**

14 *al.*,                      )   **(2) GRANTING IN PART AND**

                       )   **DENYING IN PART MOTION TO**

15           Defendants.  )   **DISMISS FILED BY DEFENDANTS**

                       )   **RONI DERSOVITZ AND**

16 _____ )   **FLOATING ASSETS, LTD.; (3)**

AND RELATED COUNTERCLAIMS.  )   **GRANTING IN PART AND**

17                                          )   **DENYING IN PART MOTION TO**

                       )   **STRIKE FILED BY DEFENDANTS**

18                                          )   **RONI DERSOVITZ AND**

                       )   **FLOATING ASSETS, LTD; (4)**

19                                          )   **DENYING MOTIONS TO DISMISS**

                       )   **AND TO STRIKE FILED BY**

20                                          )   **DEFENDANT TIN PLATE**

                       )   **PURCHASING CORPORATION;**

21                                          )   **AND (5) GRANTING LEAVE TO**

                       )   **AMEND**

22 _____ )

23       In this action arising out of multiple business transactions, Plaintiffs Pacific Rollforming,

24 LLC dba Trackloc Pacific ("Pacific"), Todd Beasley, Curt Kinney and Architectural Metal

25 Products, Inc. ("AMP") filed a third amended complaint alleging twelve causes of action,

26 primarily for breach of contract, fraud and other business torts, against nine Defendants.

27 Defendants Roni Dersovitz, Floating Assets, Ltd. ("Floating Assets"), Trakloc North America,

28 LLC ("TLNA"), David Jablow, and Tin Plate Purchasing Corporation ("Tin Plate") filed

motions to dismiss various causes of action and strike portions of the operative complaint.  For the reasons stated below, the motion to dismiss filed by TLNA and Jablow is **GRANTED IN PART AND DENIED IN PART**, motion to dismiss filed by Dersovitz and Floating Assets is **GRANTED IN PART AND DENIED IN PART**, their motion to strike is **GRANTED IN PART AND DENIED IN PART**, and Tin Plate's motions to dismiss and to strike are **DENIED**.  Plaintiffs are granted **LEAVE TO AMEND**.

This action arises primarily out of a Master Area License Agreement ("License Agreement") whereby in 2005 Trakloc International, LLC ("TLI") granted Pacific a license to manufacture and market a certain proprietary drywall and stud framing system ("Trakloc").  In 2006, after TLI failed to perform on a loan guarantee to Pandora Select Partners, LP ("Pandora"), Pandora acquired TLI's intellectual property rights referenced in the License Agreement, which had been pledged as security for the guarantee, and became TLI's successor-in-interest.  (Third Am. Compl. ("Compl.") at 3, 7.)  In 2007 Defendants TLNA and Tin Plate jointly acquired the intellectual property rights and became successors-in-interest to TLI and Pandora.  (Compl. at 4.)  Based on the premise that TLNA and Tin Plate as TLI's successors-in-interest undertook TLI's obligations toward Pacific under the License Agreement (*id.*), Pacific seeks a declaration of rights and duties under the License Agreement, and alleges claims for breach of contract and fraud against both of them and breach of the implied covenant of good faith and fair dealing against TLNA.  (Compl. at 5-9, 15-16 (first, second, third, and seventh causes of action).)  Essentially, Pacific claims it entered into the License Agreement because TLI failed to disclose material facts and that TLNA and Tin Plate failed to provide marketing support, technical information, equipment and product certification, and failed to protect Pacific's exclusive geographical territory as required by the Licence Agreement, causing Pacific to incur damages.  (Compl. at 5-6.)

In addition, Pacific alleges that in the fall and winter of 2007 Defendants TLNA, David Jablow, Southeastern Metals, Inc. and Thomas Horst defamed Pacific and interfered with its contractual and other business relationships, when they contacted Pacific's distributor, primary end user, potential customers and potential investors.  (Compl. at 9-15 (fourth, fifth and sixth

07cv1897

causes of action).)  Pacific alleges that they did so with the intent of driving it out of business, in which they succeeded.

Pacific also alleges that in the fall of 2007, upon urging by Defendants Marc Bernstein and Roni Dersovitz and based on Dersovitz' representations, it entered into an agreement with Defendant Part 47, whereby Part 47 acquired a membership interest in Pacific.  (*Id.* at 16.)  The ultimate goal was to combine all of the Trackloc technical rights under common ownership.  This would be accomplished by the new entity obtaining Trakloc patent rights and other related intellectual property from Will Andrews and Wiltin Pty Ltd. ("Patent Owners") and bringing a lawsuit against Pandora and Jablow to terminate TLNA's rights as licensor.  (Compl. at 16.)  As an inducement to entering into the agreement with Part 47, Dersovitz promised to fund Part 47's capital contribution to Pacific, which would enable Pacific to meet its obligations and stay in business.  (Compl. at 16-17.)  Pursuant to the agreement, Dersovitz was allowed to take over the financial management of Pacific.  (*Id.* at 17.)

In early 2008 Part 47 entered into an agreement with TLNA and formed a new entity, Trakloc America, LLC ("Trakloc America").  Trakloc America attempted to acquire Trakloc patent and related intellectual property rights from the Patent Owners but failed.  Subsequently, Dersovitz informed Pacific he would not perform his promise of funding Part 47's capital contribution, but proposed that Pacific, a new entity to be created by Dersovitz (Defendant Floating Assets) and TLNA form a new business entity which would hold all of Trakloc patent and license rights.  Dersovitz promised to contribute $750,000 to the combined entity.  In addition, Dersovitz or Floating Assets would acquire the patent and other intellectual property rights from Patent Owners for $1.25 million.  As a part of this proposal, Dersovitz asked Pacific's President Plaintiff Todd Beasley to negotiate with the Patent Owners for the patent and other intellectual property rights.  Pacific and TLNA agreed to this proposal.  (Compl. at 18.)  With Beasley's assistance, Floating Assets was successful in acquiring the patent and intellectual property rights.  When the purchase was consummated, Dersovitz refused to perform his promise to roll Floating Assets, TLNA and Pacific into one business entity and make a capital contribution, but instead joined Jablow and TLNA in their scheme to force Pacific out of

business.  (*Id*.)

Plaintiffs Pacific, Beasley, Kinney and AMP allege a fraud claim against Dersovitz, Berenstein, Part 47, Jablow and TLNA claiming that Dersovitz never intended to perform his promises, but made them only to induce their reliance, including assistance in obtaining the patent and other intellectual property rights form the Patent Owners.  (Compl. at 14-19 (eighth cause of action).)   Plaintiffs further allege Berenstein, Dersovitz and Part 47 breached the agreement to make a capital contribution to Pacific.  (Compl. at 19-20 (ninth cause of action).) Separately, Pacific alleges breach of oral contract against Dersovitz and Floating Assets for failing to perform the oral agreement to roll Pacific, TLNA and Floating Assets into a new business entity and conversion against Dersovitz for stealing money from Pacific while acting as Pacific's financial manager.  (Compl. at 20-22 (tenth and eleventh causes of action).

Last, Pacific alleges interference with prospective economic advantage against Dersovitz and Jablow.  After Pacific was forced out of business, it entered into negotiations with its largest creditor Oxbow Steel International, LLC ("Oxbow") to form a partnership and resume the steel manufacturing business to produce Trakloc and standard parts for steel framing.  In furtherance of forming the partnership, Pacific attempted to renew equipment leases; however, Jablow and Dersovitz contacted the lessors with offers to purchase the equipment, although they had no use for it.  Pacific alleges that Jablow and Dersovitz contacted the lessors with the intent to disrupt Pacific's negotiations with Oxbow and ensure that Pacific could not restart its business, in which they were successful.  (Compl. at 22-23 (twelfth cause of action).)

Jablow and TLNA filed a motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the third cause of action for breach of the covenant of good faith and fair dealing for failure to state a claim; dismiss the eighth cause of action for fraud as barred by the litigation privilege; and dismiss the twelfth cause of action for interference with prospective economic advantage for failure to state a claim.  In addition, they moved to dismiss the eighth cause of action for fraud and ninth cause of action for breach of contract arguing that Beasley, Kinney and AMP lack standing.  For the reasons stated below, the motion is granted with respect to the twelfth cause of action only and denied in all other respects.

1    Dersovitz and Floating Assets moved under Rule 12(b)(6) to dismiss the eighth cause of

2    action for fraud, ninth cause of action for breach of contract and eleventh cause of action for

3    conversion based on the doctrine of election of remedies; dismiss the tenth cause of action for

4    breach of oral contract for failure to state a claim and as barred by the statute of frauds; and

5    dismiss the twelfth cause of action for interference with prospective economic advantage for

6    failure to state a claim.  They moved to dismiss the eighth and ninth causes of action on the

7    alternative ground that Beasley, Kinney and AMP lack standing.[1]  For the reasons stated below,

8    the motion is granted with respect to the ninth and twelfth causes of action only and denied in all

9    other respects.

10    In addition, Dersovitz and Floating Assets filed a motion pursuant to Rule 2(f) to strike

11    from the operative complaint multiple references to Dersovitz based on the argument that

12    contrary to the allegations in the complaint, Part 47 was not Dersovitz' alter ego; and strike the

13    eighth cause of action for fraud based in the parol evidence rule.  For the reasons stated below,

14    the motion is granted with respect to the alter ego allegations only and denied in all other

15    respects.

16    Last, Tin Plate filed a motion to dismiss under Rule 12(b)(6) all claims asserted against it

17    and to strike under Rule 12(f) multiple references to it in the operative complaint based on the

18    argument that all claims against it are based on the erroneous premise that it was a successor-in-

19    interest to TLI and Pandora.[2]  For the reasons stated below, Tin Plate's motions are denied.

### **Pacific's Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Against TLNA**

22    TLNA and Jablow moved under Rule 12(b)(6) to dismiss the third cause of action for

23    failure to state a claim.  A Rule 12(b)(6) motion tests the sufficiency of the complaint.  *Navarro*

24    *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6)

---

26    [1]    The motions filed by Jablow and TLNA on one hand and Dersovitz and Floating
Assets on the other are largely duplicative.  This is contrary to the Court's Standing Order for
27    Civil Cases ("Standing Order").

28    [2]    In contravention to the Standing Order, the motions filed by Tin Plate are largely
duplicative.

07cv1897

1   motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

2   the grounds of his entitlement to relief requires more than labels and conclusions, and a

3   formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be

4   enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*,

5   550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted).  In

6   reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual

7   allegations and must construe them in the light most favorable to the nonmoving party.  *Cahill v.*

8   *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  Legal conclusions need not be taken

9   as true merely because they are cast in the form of factual allegations.  *Roberts v. Corrothers*,

10  812 F.2d 1173, 1177 (9th Cir. 1987); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

11  1981).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to

12  defeat a motion to dismiss."  *Pareto v. Fed. Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir.

13  1998).

14         Defendants argue that Pacific failed to state a claim for breach of the implied covenant of

15  good faith and fair dealing.  Pacific alleges that TLNA breached the covenant implied in the

16  Licence Agreement, when it used the negotiations to resolve the parties' differences under the

17  License Agreement merely to obtain confidential information from Pacific and then use it to

18  approach Pacific's suppliers and customers to drive Pacific out of business, thus depriving it of

19  the benefits of the License Agreement.  (Compl. at 8-9; Opp'n at 2.)

20         In every contract or agreement there is an implied promise of good faith and fair
       dealing.  This means that each party will not do anything to unfairly interfere with
21     the rights of any other party to receive the benefits of the contract; however, the
       implied promise of good faith and fair dealing cannot create obligations that are
22     inconsistent with the terms of the contract.

23  Jud. Council of Cal., Civ. Jury Instruction 325 (2010).

24         In the context of Pacific's application for a temporary restraining order, the Court found

25  that there was a strong likelihood Pacific would prevail on the merits because it appeared that

26  TLNA acted wrongfully under the terms of the License Agreement.  (Order Granting Pl.'s Ex

27  Parte App. for a TRO at 3-5.)  Defendants argue that the claim is simply duplicative of the first

28  cause of action for breach of contract.  This, however, is not a sufficient reason for dismissal.

07cv1897

1    Pursuant to Federal Rule of Civil Procedure 8(d), a plaintiff may allege alternative and

2    inconsistent claims for relief.  To the extent the allegations are sufficient for relief under the

3    breach of contract claim, Pacific may be able to recover under that theory.  To the extent they do

4    not amount to breach of contract, Pacific may be able to show, for example, that although

5    TLNA's conduct was not prohibited by the agreement, it was "nevertheless contrary to the

6    contract's purposes and the parties' legitimate expectations."  *Carma Developers (Cal.), Inc. v.*

7    *Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 373 (1992).

8         For the first time in the reply brief, Defendants raise the issue that the claim may be

9    precluded by the litigation privilege.  Parties should not raise new issues for the first time in their

10   reply briefs.  *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir, 1990).  Although the

11   litigation privilege was raised in the same motion in the context of the eighth cause of action for

12   fraud (Mem. of P.&A. at 7-9), the fraud claim is based on different factual allegations and

13   Pacific did not have an opportunity to address litigation privilege in the context of breach of the

14   implied covenant of good faith and fair dealing.  The Court therefore declines to address this

15   issue at this time.  Defendants may raise it in an appropriate motion and give Pacific an

16   opportunity to respond.  Without deciding, the Court also notes that the negotiations alleged in

17   the operative complaint in support of the breach of the implied covenant occurred prior to the

18   filing of the instant action (*see* Compl. at 8-9) and therefore cannot be said as a matter of law to

19   be barred by the litigation privilege.  *See Action Apartment Ass'n, Inc. v. City of Santa Monica*,

20   41 Cal.4th 1232, 1251-52 (2007).  For all of the foregoing reasons, Jablow and TLNA's motion

21   to dismiss the third cause of action for breach of the implied covenant of good faith and fair

22   dealing is **DENIED**.

23           **Motion by Dersovitz and Floating Assets to Strike References to**
             **Part 47 as Dersovitz' Alter Ego**
24

25        Dersovitz and Part 47 moved to strike pursuant to Rule 12(f) the allegations that Part 47

26   was Dersovitz' alter ego and related references to Dersovitz.  (*See, e.g.,* Compl. at 2.)  Under

27   Rule 12(f), "the court may order stricken from any pleading any insufficient defense or any

28   redundant, immaterial, impertinent, or scandalous matter."

07cv1897

Dersovitz and Floating Assets argue that the Pre-Incorporation Agreement, which is expressly referenced in the operative complaint (Compl. at 16)[3] contains a provision which negates this allegation.  According to Defendants, Section 3.2 of the Pre-Incorporation Agreement provides in pertinent part:

> Should Dersovitz fail to make either of the two (2) investment payments in the time prescribed, he will be given five (5) days written notice to cure.  If his default is not cured in that time frame he shall forfeit his entire interest in the company and his shares shall revert to the remaining shareholders on a 50-50 basis.  No amount of funds paid by Dersovitz to the company prior to such default shall be returned to him.

(P.&A. at 5.)[4]  Defendants argue that because the complaint alleges that Dersovitz failed to perform the promise to make the payments, he lost his shares in Part 47 and therefore Part 47 cannot be his alter ego.  (*Id.*)  Because these allegations in the operative complaint appear to contradict a provision of the agreement which is expressly referenced therein, Defendants' motion to strike is **GRANTED**.

Pacific has requested leave to amend the alter ego and other related allegations which Defendants have moved to strike.  Rule 15 advises the court that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a).  "This policy is to be applied with extreme liberality."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks and citation omitted).  Because Pacific contends that it can show that despite the Pre-Incorporation Agreement's provision Dersovitz continued to act on behalf of Part 47 and use it as his alter ego, its request for leave to amend is **GRANTED**.

/ / / / /

/ / / / /

---

[3]     Although the complaint states that the Pre-Incorporation Agreement is attached as Exhibit 1, no exhibits were attached to the third amended complaint.  (*See* docket no. 116.)

[4]     On a Rule 12(b)(6) motion to dismiss, the court may consider documents expressly referenced in the complaint.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), superseded by statute on other grounds as stated in *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds by Gailbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

**Beasley, Kinney and AMP's Standing to Assert the Eighth Cause
of Action for Fraud Against Part 47, Bernstein, Dersovitz,
Jablow and TLNA and the Ninth Cause of Action for Breach of
Contract Against Bernstein, Dersovitz and Part 47**

Dersovitz, Floating Assets, Jablow and TLNA challenge Beasley, Kinney and AMP's standing.  The only claims asserted by Beasley, Kinney and AMP are the eighth cause of action for fraud and the ninth cause of action for breach of contract.  Defendants argue that Beasley, Kinney and AMP, who hold membership interests in Pacific (Compl. at 2), lack standing to assert these claims.

> The test for standing appears in the familiar language of *Lujan v. Defenders of Wildlife*, requiring a party to show three things: "First, [it] must have suffered an injury in fact -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . ..  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1036 (9th Cir. 2010), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (all brackets and ellipses in *Coto*).  Standing is a jurisdictional requirement under Article III of the United States Constitution and cannot be assumed.[5]  *Coto*, 593 F.3d at 1036; *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 n.6.

Generally, "shareholders do not have standing to assert the claims of the corporation, unless they do so through derivative actions."[6]  *Coto*, 593 F.3d at 1037.  Injury to the corporation is not injury to the shareholders for purposes of standing, although a shareholder who is injured separately from the corporation's injury has standing apart from the corporation.  *Id*., citing *RK Ventures*, 307 F.3d at 1057.

The operative complaint alleges individual injuries suffered by Beasley, Kinney and AMP.  They allege that Defendants drove Pacific out of business, which caused Beasley, Kinney

---

[5]     Although the Court may not assume standing as to Beasley, Kinney and AMP, their lack of standing does not preclude federal jurisdiction over the case, because Pacific has standing to assert all the claims alleged in the operative complaint.

[6]     The Court is mindful that Pacific is a limited liability company and not a corporation.  (Compl. at 2.)  Nevertheless, standing principles which apply to corporations are appropriate here.  *See Coto*, 593 F.3d at 1036-37 (applying shareholder standing to an LLC member's standing).

07cv1897

1   and AMP to lose their investments in and advances to Pacific.  (Compl. at 19.)  In addition,

2   Beasley and Kinney were damaged by the loss of wages and unpaid loans from Pacific.  (*Id*.)

3   They also claim they were third party beneficiaries of the contract alleged in the ninth cause of

4   action.  (*Id*. at 20.)

5        These are sufficient allegations of injury-in-fact, causation and that, in the event Beasley,

6   Kinney and AMP ultimately prevail, their injuries can be redressed with the requested damages.

7   The allegations are therefore sufficient for purposes of Article III standing.  To the extent

8   Defendants challenge Beasley, Kinney and AMP's standing under Article III , their motions are

9   **DENIED**.

10       Defendants' motions can also be understood to challenge not standing, but Beasley,

11  Kinney and AMP's capacity to sue, *i.e.*, their capacity to state a claim for purposes of Rule

12  12(b)(6).  In this regard, both sides rely on California case law addressing a shareholder's right

13  to sue.  However, as alleged in the operative complaint, Beasley, Kinney and AMP all appear to

14  be residents of Alaska.  (Compl. at 2.)  The Court notes, without deciding, that it appears Alaska

15  state law applies to the capacity to sue issue in this case.  *See* Fed. R. Civ. P. 17(b).  As neither

16  side briefed Rule 17, Defendants' motions to dismiss are **DENIED** as to Beasley, Kinney and

17  AMP's capacity to sue without prejudice to properly briefing Rule 17 and capacity to sue issues

18  in an appropriate motion.

19  **Whether Election of Remedies Bars Plaintiffs' Eighth Cause of
    Action for Fraud Against Bernstein, Dersovitz, Part 47, Jablow**
20  **and TLNA; Plaintiffs' Ninth Cause of Action for Breach of
    Contract Against Bernstein, Dersovitz and Part 47; and Pacific's**
21  **Eleventh Cause of Action for Conversion Against Dersovitz**

22       Based on a notice of rescission, Dersovitz and Floating Assets argue that the eighth cause

23  of action for fraud, ninth cause of action for breach of contract and eleventh cause of action for

24  conversion should be dismissed because they are barred by Pacific's election of remedies.  They

25  request the Court to consider the notice of rescission, which is not attached to or referenced in

26  the complaint.

27       When ruling on a motion to dismiss, the court may consider "materials incorporated into

28  the complaint or matters of public record."  *Coto*, 593 F.3d at 1038 (citations omitted).  The

doctrine of incorporation by reference has been extended to "consider documents in situations where the complaint necessarily relies upon a document . . ., the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* (citations omitted). Accordingly, even where the complaint does not explicitly refer to the document, but the document is integral to the complaint and the document's authenticity is not disputed, the document may be considered. *Id.* Under these circumstances, the court in *Coto Settlement v. Eisenberg* considered a billing agreement, because it found that the legal sufficiency of a conversion claim depended on the terms of the agreement. *Id.*

The notice of rescission is integral to the eighth, ninth and eleventh causes of action because it pertains to the same transaction and because the legal sufficiency of these claims depends on the terms of rescission. The parties do not dispute the authenticity of the notice of rescission and Plaintiffs concede that the breach of contract claim should be dismissed based on the notice of rescission. (Opp'n at 2.) Defendants' request to consider the document is therefore granted.

Plaintiffs argue that if the Court considers the notice of rescission, it must convert the motion to dismiss to a motion for summary judgment. The Court disagrees. The notice of rescission may be considered on a motion to dismiss pursuant to Rule 12(b)(6) without the need to convert it to a summary judgment motion. *See Coto*, 593 F.3d at 1037-38; *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). The Court therefore declines to consider the declaration of Todd Beasley, which Pacific filed in case the motion were converted to a summary judgment motion.

On October 26, 2007 Pacific entered into an agreement with Part 47 whereby Part 47 acquired a membership interest in Pacific in exchange for a promise to advance funds to Pacific necessary for Pacific's ongoing operations, pay at least $3 million as a capital contribution, and remove the individual and corporate guarantors from Pacific's obligations. (Compl. at 16-17.) Under the agreement, Dersovitz was to and did act as Pacific's financial manager. (*Id.* at 17 & 21.) In this capacity Dersovitz allegedly converted funds from Pacific. (*Id.* at 21-22.) Approximately a year after entering into the agreement, Pacific rescinded it claiming that it was

1   fraudulently induced and because Part 47 did not fulfill any of its promises.  (Dersovitz &

2   Floating Assets Request for Judicial Notice Ex. A ("Rescission").)  Defendants argue that the

3   Rescission bars as a matter of law the claims for fraud, breach of contract and conversion.

4        If a defrauded party is induced by false representations to execute a contract, the party has

5   the option either of rescinding the contract, or affirming it and recovering tort damages.  *Persson*

6   *v. Smart Inventions, Inc.,* 125 Cal. App. 4th 1141, 1153 (2005).  Rescission consists of

7   restoration by the plaintiff of benefits received under the contract, if any, if the equities of the

8   case require it, *id*. at 1155, "coupled with restitution to the plaintiff of the consideration which he

9   gave," *Denevi v. LGCC*, 121 Cal. App. 4th 1211, 1220 (2004).  In the alternative, the victim of

10  fraud also has the right to affirm the contract, retain its benefits and make up in damages the loss

11  suffered by the fraud.  *Id*.  Accordingly, Pacific may either sue for tort damages, in this case

12  fraud and conversion, or rescission.  Pacific acknowledges that the ninth cause of action for

13  breach of contract should be dismissed and requests leave to amend to allege a claim for

14  rescission instead.  (Opp'n at 3, 5.)

15       Defendants argue that Pacific should not be allowed to amend the complaint to allege

16  rescission in place of breach of contract because, they allege, Pacific has not fulfilled the

17  necessary condition precedent of returning the benefit it received from the rescinded contract.

18  While a defrauded plaintiff's restoration of benefits received is generally required, it is not

19  always required.  *See Persson,* 125 Cal. App. 4th at 1155.  Rescission is an equitable doctrine

20  and the restoration of benefits is necessary only if the equities of the case so require.  *Id*. at 1155.

21  Defendants' suggestion that the Court should deny leave to allege rescission is therefore

22  rejected.

23       Defendants next contend that the fraud and conversion claims are barred because Pacific

24  has already chosen to rescind the contract instead.  The defrauded plaintiff has two concurrent

25  remedies to obtain relief on the same state of facts.  In order to avoid a double recovery and

26  inconsistent judgment, the plaintiff must elect between the remedies.  *Denevi*, 121 Cal. App. 4th

27  at 1218.  Ordinarily, a plaintiff cannot be compelled to make the election at the pleading stage,

28  except if the plaintiff has gained some advantage that would make it inequitable to permit the

1    continued pursuit of an otherwise available remedy.  *Id*. at 1221.  If the plaintiff "has clearly

2    elected to proceed on one [remedy], he is bound by this election and cannot thereafter pursue the

3    other."  *Id*. at 1218.

4         Based on the plain meaning of the Rescission, Pacific has not made a clear election, as the

5    Rescission expressly reserves the right to sue for damages:

> As a result of the numerous and continuing breaches of the Agreement, [Pacific]
> has suffered extensive damages . . ..  [Pacific] intends to hold Part 47, [Trakloc
> America] and its individual members . . . fully responsible for those damages and
> intends to take legal action against the culpable parties.  [¶]  This letter is not
> intended as a full statement of all of  [Pacific's] rights or remedies, all of which are
> hereby expressly reserved.

10   (Rescission at 2.)

11        Defendants' reliance on Pacific's allegations that after Rescission the parties entered into

12   an oral agreement to combine into a new business entity ("Oral Agreement") (Compl. at 20-21

13   (tenth cause of action)) is also unavailing.  Pacific's participation in the Oral Agreement would

14   compel an election to rescind only if it had gained some advantage as against Defendants so as

15   to make it inequitable to allow Plaintiff to retain the choice of remedies.  *See Denevi*, 121 Cal.

16   App. 4th at 1220 n.4, citing *Schied v. Bodinson Mfg. Co.*, 79 Cal. App. 2d 134, 138 (1947).

17   Defendants have not pointed to any benefit Pacific has obtained from the Rescission or the Oral

18   Agreement and do not claim they have suffered any detriment, as is required to force the election

19   before trial.  *See Denevi*, 121 Cal. App. 4th at 1221.  Moreover, Federal Rules expressly permit a

20   plaintiff to allege alternative and inconsistent claims.  Fed. R. Civ. Proc. 8(d).

21        The motion of Dersovitz and Floating Assets to dismiss the eighth, ninth and tenth causes

22   of action based on election of remedies is therefore **GRANTED** with respect to the ninth cause

23   of action only and **DENIED** in all other respects.  Plaintiffs' request for leave to amend is

24   **GRANTED**.

25        ### Whether Parol Evidence Rule Bars Plaintiffs' Eighth Cause of
26            ### Action for Fraud

27        In their motion to strike, Dersovitz and Floating Assets argue that the eighth cause of

28   action for fraud is barred by the parol evidence rule because the October 26, 2007 agreement

07cv1897

1   contained an integration clause.  This argument is rejected.  The complaint alleges fraud in the

2   inducement.  (Compl. at 17, 19.)  A party may claim fraud in the inducement of a contract

3   containing an integration clause and introduce parol evidence to show such fraud.  *Hinesley v.*

4   *Oakshade Town Center*, 135 Cal. App. 4th 289, 301 (2005), citing *Ron Greenspan Volkswagen,*

5   *Inc. v. Ford Motor Land Development Corp.*, 32 Cal. App. 4th 985, 992-95 (1995).

6          Fraud in the inducement renders the entire contract voidable, including any
        provision in the contract providing the written contract is, for example, the sole
7          agreement of the parties, that it contains their entire agreement and that there are
        no oral representations (integration/no oral representations clause).
8

9   *Hinesley*, 135 Cal. App. 4th at 301(internal citations omitted).  Accordingly, Defendants' motion

10  to strike the eighth cause of action for fraud is **DENIED**.

11              **Whether Litigation Privilege Bars Plaintiffs' Eighth Cause of**
              **Action for Fraud**
12

13         Jablow and TLNA moved to dismiss the eighth cause of action for fraud arguing that it is

14  barred by the litigation privilege because it is based on negotiations to settle this case.  They

15  contend that their statements in connection with negotiations to form a new entity with Pacific

16  are protected.

17         The litigation privilege, codified in California Civil Code Section 47(b), "provides that a

18  publication or broadcast made as part of a judicial proceeding is privileged.  This privilege is

19  absolute in nature applying to *all* publications, irrespective of their maliciousness."  *Action*

20  *Apartment Ass'n*, 41 Cal.4th at 1241 (emphasis in original, internal quotation marks and citations

21  omitted).  The privilege applies to

22          any communication (1) made in judicial or quasi-judicial proceedings; (2) by
        litigants or other participants authorized by law; (3) to achieve the objects of the
23          litigation; and (4) that has some connection or logical relation to the action.  The
        privilege is not limited to statements made during a trial or other proceedings, but
24          may extend to steps taken prior thereto, or afterwards.

25  *Id.* (internal brackets, quotation marks and citations omitted).  "A threshold issue in determining

26  if the litigation privilege applies is whether the alleged injury arises from a communicative act or

27  noncommunicative conduct."  *Id.* at 1248.  "As a general rule, the privilege applies only to

28  / / / / /

                                        14                                      07cv1897

1  communicative acts and does not privilege tortious courses of conduct." *Id*. at 1249 (internal

2  quotation marks and citations omitted).

3        Plaintiffs argue that the privilege does not apply to bar the fraud claim against Jablow and

4  TLNA because it is not based on any statements made by Jablow or TLNA (*see* Compl. at 18-

5  19) and is therefore not based on any communicative act on their part.  Jablow and TLNA's role

6  in the fraud was to combine TLNA's assets, including interests in Trakloc, with Floating Assets

7  to the exclusion of Pacific.  (Compl. at 18-19.)  Plaintiffs argue that the fraud claim against

8  Jablow and TLNA is therefore based on their tortious course of conduct rather than

9  communicative acts.  Even if in the course of conduct Jablow and TLNA made any statements,

10  according to the operative complaint, this is not what caused Plaintiffs' injuries.  Pacific was

11  driven out of business because TLNA and Floating Assets joined forces to the exclusion of

12  Pacific.  (Compl. at 19.)  To the extent Jablow and TLNA engaged in any communicative acts,

13  the acts were isolated and did not form the gravamen of the fraud claim.  The fraud claim against

14  Jablow and TLNA is therefore not barred by the litigation privilege.  *See LiMandri v. Judkins*,

15  52 Cal. App.4th 326, 345 (1997).

16        For the first time in the reply brief, Jablow and TLNA argue that the litigation privilege

17  should apply because the complaint alleges fraud against them based on their participation as co-

18  conspirators with Dersovitz, Bernstein and Part 47, or in the alternative that Plaintiffs cannot

19  state a claim for fraud against them at all because the alleged misrepresentations were made by

20  Dersovitz and not Jablow or TLNA.  Because these arguments were raised for the first time in

21  the reply, Plaintiffs did not have an opportunity to address them.  Parties should not raise new

22  issues for the first time in their reply briefs.  *Eberle*, 901 F.2d at 818.  The Court also notes that

23  Defendants do not cite any legal authority in support of their theory for the application of the

24  litigation privilege (or any other defense) in the conspiracy context.  The Court therefore

25  declines to address these arguments at this time.  Defendants may raise them again in an

26  appropriate motion with citations to relevant legal authority, and give Plaintiffs an opportunity to

27  respond.

28  / / / / /

07cv1897

1   Although only the fraud claim was asserted against Jablow and TLNA, they purport to

2   assert the litigation privilege also on behalf of Dersovitz, Bernstein, Floating Assets and Part 47

3   with respect to the eighth cause of action for fraud, ninth cause of action for breach of contract

4   and tenth cause of action for breach of the Oral Agreement.  (P.&A. at 9.)  These parties did not

5   argue in their respective motions that these claims are barred by the litigation privilege.

6   Dersovitz, Bernstein, Floating Assets and Part 47 did not become parties to this action

7   until the filing of the third amended complaint in September 2009.  The events giving rise to the

8   eighth, ninth and tenth causes of action occurred before they were parties to this litigation.  (*See*

9   Compl. at 16-21.)  The litigation privilege therefore does not necessarily apply to them.  *See*

10  *LiMandri*, 52 Cal. App. 4th at 345.  To the extent these Defendants may contend that their

11  statements during the relevant time related to contemplated future litigation, the Court cannot

12  conclude as a matter of law at this stage of proceedings that they were shielded by the litigation

13  privilege.  *See Action Apartment Ass'n*, 41 Cal.4th at 1251-52.  Based on the foregoing, Jablow

14  and TLNA's motion to dismiss based on the litigation privilege is **DENIED**.

15  <u>**Pacific's Tenth Cause of Action for Breach of Oral Agreement**</u>
    <u>**Against Dersovitz and Floating Assets**</u>

16

17  Dersovitz and Floating Assets move to dismiss the tenth cause of action for breach of the

18  Oral Agreement arguing that the agreement is insufficiently pled and that the claim is barred by

19  the statute of frauds.  Pacific alleges that it entered into the Oral Agreement to combine into a

20  new business entity with Floating Assets and TLNA.  (Compl. at 20.)  Incorporated by reference

21  into this claim are the allegations regarding the formation of the agreement.  (*Id*. at 20; *see also*

22  *id*. at 18.)  Dersovitz proposed Pacific, a new entity to be created by Dersovitz (Floating Assets),

23  and TLNA form a new business entity which would hold all of Trakloc patent and license rights.

24  Dersovitz would contribute $750,000 to the new entity.  In addition, Dersovitz or Floating

25  Assets would acquire the patent and other intellectual property rights in Trackloc from Patent

26  Owners for $1.25 million.  As a part of this proposal, Dersovitz asked Beasley to negotiate with

27  the Patent Owners for the patent and other intellectual property rights, as Dersovitz had been

28  unsuccessful in his prior attempt.  The parties agreed to Dersovitz' offer.  (Compl. at 18.)

Pacific, through Beasley's efforts, negotiated with the Patent Owners the sale of patent and other intellectual property rights to Floating Assets for $1.25 million, thus fulfilling its side of the Oral Agreement. (*Id.* at 18, 21.) Once Floating Assets acquired the intellectual property, Dersovitz refused to fulfill his part of the agreement by refusing to advance $750,000 and roll Pacific, TLNA and Floating Assets into a new business entity. (*Id.* at 18, 21.) Instead, TLNA and Floating Assets entered into an agreement to combine their businesses without Pacific. (*Id.* at 18-19, 21.)

Federal Rules do "not require that the complaint include all facts necessary to carry the plaintiff's burden." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), quoting *Twombly*, 550 U.S. at 556. To state a claim for purposes of Rule 12(b)(6), a complaint need not allege detailed factual allegations as long as the plaintiff provides the grounds of his entitlement to relief beyond mere labels, conclusions, and formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Defendants' arguments that the claim is inadequately alleged are rejected.

Defendants also contend that the Oral Agreement is unenforceable under the statute of frauds, California Civil Code Section 1624(a)(1) and (7). Section 1624(a)(1) provides in pertinent part as follows:

> The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:
> (1) An agreement that by its terms is not to be performed within a year from the making thereof. . . .

Under section 1624(a)(1), "[t]he contract is unenforceable only where *by its terms* it is *impossible* of performance in the period. If it is merely unlikely that it will be performed, or the period of performance is *indefinite*, the statute does not apply." 1 B.E. Witkin, *Summary of California Law* § 365 at 410 (2005) (emphases in original); *see also White Lightning Co. v. Wolfson*, 68 Cal.2d 336, 343-44 & n.2 (1968). The Oral Agreement as alleged does not by its terms indicate that its performance was impossible in a one-year period. Defendants do not so contend. They merely contend that it "arguably was not to be performed in less than a year." (P.&A. at 9.) No reason appears, based on the alleged terms of the contract, why it could not be

1  performed within a year.  Defendants' argument that the contract is invalid under section

2  1624(a)(1) is therefore rejected.

3        Defendants also rely on section 1624(a)(7), which provides for another category of

4  contracts required to be in writing:

> A contract, promise, undertaking, or commitment to loan money or to grant or
> extend credit, in an amount greater than one hundred thousand dollars ($100,000),
> not primarily for personal, family, or household purposes, made by a person
> engaged in the business of lending or arranging for the lending of money or
> extending credit.  For purposes of this section, a contract, promise, undertaking or
> commitment to loan money secured solely by residential property consisting of one
> to four dwelling units shall be deemed to be for personal, family, or household
> purposes.

10  For section 1624(a)(7) to apply, the Oral Agreement must have been a promise to loan money or

11  extend credit made by a person in the business of lending or arranging for loans or credit.  Based

12  on the allegations in the operative complaint, it appears that the $750,000 was intended to be a

13  capital contribution and not a loan or offer of credit.  Furthermore, nothing in the complaint

14  suggests that either Dersovitz, Bernstein or Floating Assets were in the business of lending or

15  arranging for loans or credit, and Defendants do not so contend in their motion.  Defendants'

16  argument that the Oral Agreement is invalid under section 1624(a)(7) is therefore also rejected.

17  Based on the foregoing, the motion of Dersovitz and Floating Assets to dismiss the tenth cause

18  of action is **DENIED**.

19          **Pacific's Twelfth Cause of Action for Interference with**
          **Prospective Economic Advantage Against Jablow and Dersovitz**

20

21        In the twelfth cause of action Pacific alleges that Dersovitz and Jablow intentionally

22  interfered with Pacific's prospective economic advantage.  After Defendants breached the Oral

23  Agreement to form a new business entity with Pacific, Pacific was not able to continue

24  operating, and entered into negotiations with Oxbow, its largest creditor, to form a partnership

25  whereby Pacific would resume steel manufacturing, including production of Trakloc studs.

26  (Compl. at 22.)  In pursuit of the partnership with Oxbow, Pacific entered into negotiations to

27  resume leasing equipment necessary for production, which involved two equipment lessors.

28  (*Id.*)  Dersovitz and Jablow allegedly interfered with these negotiations by making offers to the

1  lessors for the same equipment, although they had no use for the equipment themselves.  (*Id.*)

2  Specifically, Dersovitz and Jablow made the offers with knowledge of Pacific's negotiations,

3  with the intent to preclude Pacific from resuming its business, and not for any legitimate

4  business purpose.  (*Id.*)  Defendants' actions resulted in Pacific's inability to reach an agreement

5  with Oxbow and resume its business.  (*Id.*)

6       Defendants argue that the intentional interference claim should be dismissed because it

7  insufficiently alleges the element that the act of interference "was wrongful by some legal

8  measure other than the fact of interference itself."  *Korea Supply Co. v. Lockheed Martin Corp.*,

9  29 Cal.4th 1134, 1153 (2003), quoting *Della Penna v. Toyota Motor Sales U.S.A., Inc.*, 11

10 Cal.4th 376, 393 (1995).  "[A]n act is independently wrongful if it is unlawful, that is, if it is

11 proscribed by some constitutional, statutory, regulatory, common law or other determinable legal

12 standard."  *Korea Supply*, 29 Cal.4th at 1159.[7]

13      Relying on *Rickel v. Schwinn Bicycle Company*, 144 Cal. App. 3d 648 (1983) and *Bed,*

14 *Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, 52 Cal. App. 4th

15 867 (1997), Dersovitz and Jablow argue that their conduct was not independently wrongful.

16 Neither case is on point.  In *Rickel*, the defendant refused to grant distributorship rights for

17 Schwinn bicycles to a potential buyer of plaintiff's business, which caused the sale to fall

18 through.  The court found that pursuant to the distributorship agreement between plaintiff and

19 defendant, the plaintiff's distributorship rights were nonassignable and that defendant's policy of

20 not granting distributorship rights to non-Schwinn shops in the geographic area was not

21 independently wrongful.  *Rickel*, 144 Cal. App. 3d at 661-63.  Unlike the defendant in *Rickel*,

22 TLNA, whose President was Jablow, was precluded under the License Agreement from

23 interfering in Pacific's exclusive territory.  (Order Granting Pl.'s Ex Parte App. for a TRO at 4,

24 citing License Agreement at ¶ 4.2-4.4.)  Pacific alleges that Defendants precluded it from

25

26      [7]    The independently wrongful act is not further defined under California law.  *Id*. at
   1159 n.11 ("We need not in this case further define which sources of law can be relied on to
27 determine whether a defendant has engaged in an independently wrongful act, other than to say
   that such an act must be wrongful by some legal measure, rather than merely a product of an
28 improper, but lawful purpose of motive.").

1 exploiting the license by interfering in negotiations for the necessary equipment.  In *Bed, Bath &*
2 *Beyond*, a competitor beat the plaintiff to a lease because it agreed to a higher rent.  The court
3 held that competition did not constitute an independently wrongful act.  *Bed, Bath & Beyond*,144
4 Cal. App. 4th at 881-82.  Pacific on one hand and Dersovitz and Jablow on the other hand,
5 however, are not competitors.  Pacific had an exclusive license for certain territory and therefore
6 was not and could not have been in competition with any of the Defendants in the same territory.

7 For the first time in the reply, Defendants argue that the interference claim should fail
8 because equipment for which Pacific was negotiating was repossessed and sold to third parties.
9 (Dersovitz Reply at 10.)  Pacific did not have an opportunity to respond to this argument.  For
10 the reasons previously discussed, the Court declines to address this issue at this time.
11 Defendants may raise it in an appropriate motion and give Plaintiff an opportunity to respond.

12 Pacific argues that Defendants' conduct was independently wrongful because it amounted
13 to a restraint of trade.  Pacific does not attempt to assert a free-standing restraint of trade claim
14 against any Defendants.  Furthermore, neither in the operative complaint nor its opposition does
15 it articulate what theory of restraint of trade it is relying on, indicate whether it is proceeding
16 under federal or California law, or identify a statute.  To the extent Pacific intends to rely on the
17 Sherman Act or Cartwright Act for restraint of trade, only unreasonable restraint of trade is
18 unlawful.  *See Corwin v. Los Angeles Newspaper Serv. Bureau, Inc.*, 4 Cal.3d 842, 853 (1971);
19 *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  The operative complaint does not state that the
20 restraint of trade was unreasonable.  (*See* Compl. at 22-23.)  Furthermore, insufficient facts are
21 alleged to imply unreasonableness as that term is understood under the Cartwright or Sherman
22 Act.  *See* Jud. Council of Cal., Civ. Jury Instruction 3411 (2010) (factors relevant to
23 unreasonableness determination under the Cartwright Act); *State Oil Co.*, 522 U.S. at 10 (same
24 for the Sherman Act).  Accordingly, Pacific has not sufficiently alleged independently wrongful
25 conduct for purposes of intentional interference with prospective economic advantage.
26 Defendants' motions to dismiss the twelfth cause of action are **GRANTED WITH LEAVE TO**
27 **AMEND**.
28 / / / / /

07cv1897

**<u>Motion to Dismiss Claims Asserted Against Tin Plate and</u>**
**<u>Motion to Strike Related References in the Operative Complaint</u>**

Tin Plate filed a motion to dismiss pursuant to Rule 12(b)(6) and a motion to strike pursuant to Rule 12(f) all references to it in the operative complaint.  Pacific's claims against Tin Plate are premised on its alleged status as a successor-in-interest to TLI and Pandora with respect to the intellectual property rights referenced in the License Agreement.  (Compl. at 4.) Tin Plate argues that it is not a successor-in-interest because it did not acquire the relevant intellectual property rights.  In support of their respective arguments, both sides point to the Asset Purchase Agreement dated July 13, 2007.  Pursuant to Tin Plate's request, to which Pacific did not object (Opp'n at 2), and because the general terms of the agreement are referenced in the operative complaint (Compl. at 4), the Court takes judicial notice of the Asset Purchase Agreement.  *See Coto*, 593 F.3d at 1038.

The Asset Purchase Agreement was entered into on one hand by TLNA and Tin Plate, jointly defined as "Buyer," and on the other hand by Trakloc Building Technology Systems, Inc. ("TBTS") and Pandora, jointly defined as "Seller."  (Tin Plate Request for Jud. Notice Ex. A ("Purchase Agreement") at 1.)  It is undisputed that pursuant to the Purchase of Assets provision, Pandora was to transfer to the Buyer and the Buyer was to purchase all of Pandora's interest in various agreements, including the License Agreement.  (Purchase Agreement ¶ 1.1(b).)  The partes dispute whether, as allowed for by the Purchase of Assets provision, other terms and conditions of the Purchase Agreement specify that only TLNA acquired Pandora's interest in the intellectual property subject to the License Agreement and assumed its obligations thereunder.

Among other provisions, Pacific relies on the Buyer's representations relating to the Master License Agreement/Contingent License Agreement/IP Working Agreement, which provides as follows:

> Buyer covenants and agrees that, after the Closing Date, it will comply with all of the terms, provisions and conditions of the Master License Agreement, Contingent License Agreement and IP Working Agreement, including, without limitation, all of its performance obligations thereunder.

/ / / / /

21

(Purchase Agreement ¶ 4.6).  Because both TLNA and Tin Plate are included in the term "Buyer," Pacific argues they both undertook the obligations under the referenced agreements.

Tin Plate does not address Paragraph 4.6, but points to the Assumed Liabilities provision of the Purchase Agreement, which provides in pertinent part:

> TLNA . . . agrees to accept, as a condition to this Agreement, all liabilities and obligations of whatever kind of Seller under the Pandora Assets, any license agreement with a licensee or sublicensee of the Purchased Assets or any other agreement assigned to Buyer in connection herewith . . . .

(*Id*. ¶ 1.4.)  In addition, Tin Plate relies on four documents – a bill of sale and three assignments – executed pursuant to Paragraph 2.2 of the Purchase Agreement.  According to these documents, Tin Plate received a bill of sale for a certain master bundler and stud machine from TBTS and assumed related agreements, while TLNA assumed certain agreements from TBTS and assumed the agreements pertaining to Pandora Assets from Pandora.  (Tin Plate Request for Jud. Notice Ex. A at 20-23.)  Specifically, pursuant to the Assignment and Assumption Agreement (Pandora Assets) between Pandora and TLNA, Pandora assigned to TLNA "all of Pandora's right, title, and interest as [*sic*] in, under and to (i) the Contingent License Agreement, (ii) the Master License Agreement, (iii) the IP Working Agreement, and (iv) all amendments, modifications and addenda to any of the foregoing (the 'Pandora Agreements')," and TLNA "assume[d] and covenant[ed] and agree[d] to keep and to perform all of the terms, conditions, covenants, agreements, and provisions of the Pandora Agreements . . .."  (*Id*. at 22.)  Based on Paragraph 1.4 and the four documents executed pursuant to the Purchase Agreement, Tin Plate argues that only TLNA acquired the intellectual property rights and obligations pertaining to the License Agreement.

"When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party.  If it is not, the case is over."  *Oceanside 84, Ltd. v. Fidelity Fed. Bank*, 56 Cal. App. 4th 1441, 1448 (1997) (internal quotation marks and citation omitted).  "If a contract is capable of two different reasonable interpretations, the contract is ambiguous."  *Id*.  (internal quotation

marks and citation omitted).  Based on the plain language of the Purchase Agreement and the four related documents, particularly comparing Paragraph 4.6 with the assignment of the Pandora Assets, the Purchase Agreement is ambiguous on the issue whether Tin Plate acquired any rights in and obligations relating to the relevant intellectual property.  Resolving this ambiguity requires evidence, *see id.* at 1449 (the court looks to extrinsic evidence), and is therefore beyond the scope of a Rule 12(b)(6) motion to dismiss.  Accordingly, Tin Plate's motions to dismiss and to strike are **DENIED**.

Based on the foregoing, it is hereby **ORDERED** as follows:

1.  The motion to dismiss filed by Defendants Trakloc North America, LLC and David Jablow is **GRANTED** with respect to the twelfth cause of action for intentional interference with prospective economic advantage only and **DENIED** in all other respects.

2.  The motion to dismiss filed by Defendants Roni Dersovitz and Floating Assets, Ltd. is **GRANTED** with respect to the ninth cause of action for breach of contract and twelfth cause of action for intentional interference with prospective economic advantage only.  It is **DENIED** in all other respects.

3.  The motion to strike filed by Defendants Roni Dersovitz and Floating Assets, Ltd. is **GRANTED** only with respect to the alter ego allegations.  Accordingly, the references listed in the notice of motion to strike at pages 2 and 3 are hereby stricken.  The motion to strike is **DENIED** in all other respects.

4.  The motions to dismiss and to strike filed by Defendant Tin Plate Purchasing Corporation are **DENIED**.

5.  Plaintiffs are **GRANTED LEAVE TO AMEND**.

6.  If Plaintiffs choose to file an amended complaint, they must do so no later than **July 2, 2010**.  Defendants shall respond to the amended complaint within the time set forth in Federal Rule of Civil Procedure 15(a)(3).  If Plaintiffs choose not to file an amended complaint, Defendants shall respond within the same period of time calculated from July 2, 2010.

7.  Defendants are admonished not to raise new issues in their reply briefs and to comply in all respects with this Court's Standing Order in Civil Cases ("Standing Order").  Failure to

07cv1897

1  comply with the Standing Order, any other order of this Court, the Civil Local Rules of this

2  District, and any other applicable rules or laws may result in sanctions.  Civil Loc. Rule 83.1.

3      **IT IS SO ORDERED**.

4

5  DATED:  June 17, 2010

6

7                                              M. James Lorenz
                                               United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv1897